# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

STEPHEN CRAIG BURNETT,  )
                        )
          Plaintiff,    )
                        )
v.                      )   No. CIV 12-158-RAW-SPS
                        )
KATHY MILLER, et al.,   )
                        )
          Defendants.   )

## OPINION AND ORDER

Plaintiff appealed the Opinion and Order dismissing this action (Dkt. 202) to the Tenth Circuit Court of Appeals. The appellate court affirmed in part and remanded in part for further proceedings concerning Plaintiff's claim of unconstitutional conditions in the medical cell at Davis Correctional Facility (DCF). *Burnett v. Miller*, No. 14-7069 (10th Cir. Nov. 20, 2015) (unpublished) (Dkt. 213). Defendants have filed a motion for summary judgment on the remanded issue (Dkt. 232), Plaintiff has filed a response to the motion (Dkt. 236), and Defendants have filed a reply (Dkt. 237). Plaintiff also has filed a motion for leave to file a second motion for summary judgment (Dkt. 230).

**Factual Background**

On November 5, 2011, while incarcerated at DCF, Plaintiff submitted a request for medical services, because he had experienced chest pains after minor exertion. He was seen in the DCF clinic the next day by Defendant Colpetzer, a registered nurse, who assessed the chest pain as cardiac, musculoskeletal, or pleuritic. Colpetzer noted that Plaintiff's blood pressure was elevated, and she administered an ECG which was noted as "normal." The

ECG then was submitted to DCF physician Dr. Reiheld who determined the results were normal.

Over the next month, Plaintiff returned to the clinic for blood pressure monitoring on numerous occasions, and he submitted additional requests for medical services concerning his chest pain. On December 7, 2011, Dr. Reiheld diagnosed Plaintiff with "angina new onset" with a stated plan to schedule Plaintiff for an imaging procedure as soon as possible. Plaintiff's condition was not assessed as emergent, and Dr. Reiheld did not believe immediate transportation to another medical facility was necessary at that time.

On the afternoon of December 7, Dr. Reiheld and Defendant Miller, the DCF Health Services Administrator, placed Plaintiff in an observation cell within the DCF clinic. The purpose of his placement there was to monitor him and have him readily accessible for transportation when an appointment for an imaging stress test was scheduled at Oklahoma Heart Hospital (OHH).

Plaintiff alleges the conditions in the medical cell amounted to cruel and unusual punishment. He specifically complains of (1) a lack of heat when the outside temperature was below freezing, and (2) no food or drink for a day and a half. The nurses' log for December 8 at 9:30 p.m. indicated Plaintiff was doing fine and had no complaints of pain or distress. In addition, a monitoring form dated December 9 showed he was asleep from midnight until 6:00 a.m., and he was lying or sitting until 8:00 a.m. That form also had a

notation to "Notify Health Services Staff For: NPO -- Ø food or drink."[1] As of 8:30 a.m. on December 9, Burnett was being transported to OHH.

**Summary Judgment Standards**

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it "might affect the outcome of the suit under the governing law." *Id.* In making this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c). Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Exhaustion of Administrative Remedies**

Defendants allege Plaintiff failed to exhaust his administrative remedies before bringing this claim. "No action shall be brought with respect to prison conditions under

---

[1] "NPO" is a medical abbreviation for the Latin "non per os," meaning "nothing by mouth." Stedman's Medical Dictionary 612240 (Westlaw ed. Nov. 2014).

3

section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed. *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001).

The procedure for exhausting administrative remedies is set forth in DOC Policy OP-090124, "Offender Grievance Process," effective May 24, 2011 (Dkt. 232-2). An inmate first must attempt to resolve his complaint informally within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) within seven calendar days of the incident, raising only one issue in each RTS. If the complaint still is not resolved, he then may file a grievance with the reviewing authority within 15 calendar days of the incident, or the date of the response to the RTS, whichever is later. If the grievance does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority or the Chief Medical Officer, whichever is appropriate, within 15 calendar days of receipt of the reviewing authority's response or any amended response. The administrative process is exhausted only after all of these steps have been taken.

The record shows that during the time applicable to this lawsuit, Plaintiff used the DCF administrative remedies process to file eleven grievances. None of those grievances, however, mentioned Plaintiff's placement in the medical observation cell or the conditions

of confinement in the medical observation cell:

(1) Grievance No. 2011-1001-405-G, submitted on December 20, 2011, concerned religious issues. (Dkt. 232-4 at 3).

(2) Grievance No. 2012-1001-4-G, submitted on January 4, 2012, concerned the delay in treatment from the time he requested medical services until he saw Dr. Reiheld. He also challenged his November 6, 2011, ECG, because it was conducted by a nurse instead of a doctor (Dkt. 232-4 at 14-15).

(3) Grievance No. 2012-1001-30-G, submitted on January 9, 2012, concerned the facility's legal mail policy (Dkt. 232-4 at 21-22).

(4) Grievance 2012-1001-60-G, submitted on January 24, 2012, concerned Plaintiff's legal mail (Dkt. 232-4 at 29).

(5) Grievance 2012-1001-76-G, submitted on January 27, 2012, concerned Plaintiff's mail to the Governor (Dkt. 232-5 at 3-4).

(6) Grievance 2012-1001-86-G, submitted on February 1, 2012, concerned the processing of Plaintiff's grievances (Dkt. 232-5 at 10).

(7) Grievance 2012-1001-163-G, submitted on February 29, 2012, concerned a delay in Plaintiff's receiving his medication from December 13, 2011, until February 27, 2012 (Dkt. 232-5 at 20).

(8) Grievance 2012-1001-193-G, submitted on March 19, 2012, concerned Plaintiff's request for copies of his medical records (Dkt. 232-5 at 31).

(9) Grievance 2012-1001-223-G, submitted on March 30, 2012, as an "emergency" grievance, stated medical staff had delayed sending him to a physician in November 2011 and asked the reviewing authority to discipline or replace those staff members. The grievance was determined to be, among other things, not an emergency, and it was returned unanswered to Plaintiff on the day it was submitted (Dkt. 232-5 at 37-38).

(10) Grievance 2012-1001-273-G, submitted on April 18, 2012, concerned Plaintiff's unanswered Request to Staff concerned money withdrawn from his trust fund account (Dkt. 232-5 at 49).

(11) Grievance 2011-1001-228-G on October 17, 2011, concerned having Plaintiff's son listed as Plaintiff's attorney of record (Dkt. 232-4 at 34-39).

For Plaintiff's remanded claim to be considered on the merits, Plaintiff must have pursued to conclusion the exhaustion of administrative remedies pursuant to OP-090124. "[P]roper exhaustion of administrative remedies . . . means using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (citation omitted) (emphasis in original). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Id.* at 90-91. "[T]o properly exhaust administrative remedies prisoners must 'complete the administrative review process in accordance with the applicable procedural rules'--rules that are defined not by the PLRA, but

by the prison grievance process itself." *Jones v. Bock*, 549 U.S. 199, 218 (2007) (quoting *Woodford*, 548 U.S. at 88).

Plaintiff complains that the Grievance Coordinator's affidavit which is attached to Defendant's motion should not be considered by the Court, because OP-090124 does not specify such title or function for the processing of grievances. He also asserts the policy does not provide for the Warden's authorization to appoint a designee to perform his duties as the reviewing authority for grievances. Plaintiff speculates that if he had included his allegations about the conditions in the medical cell in Grievance No. 2012-1001-4-G, that grievance would have been rejected for including an unrelated, multiple issue. He does not explain why he did not file a separate grievance regarding the medical cell.

Plaintiff claims that under the PLRA, he is only required to exhaust available administrative remedies. He admits there was an administrative remedies process in place at his facility at the relevant time but contends there was no actual administrative remedy available to him for the claim at issue, because DCF staff members routinely violated OP-090124. The Supreme Court, however, has held that a prisoner must exhaust administrative remedies even when the relief sought cannot be granted by the administrative process. *Booth*, 532 U.S. at 739.

Citing *Ross v. Blake*, __ U.S. __, 136 S.Ct. 1850 (2016), Plaintiff alleges the grievance policy is "overly complicated, confusing, labyrinthine, and incapable of being understood" (Dkt. 236 at 8). *Ross* concerned a lower court's unwritten "special circumstances" exception

to the exhaustion requirement of the PLRA. *Id.* at 1855. The Supreme Court rejected that approach as inconsistent with the PLRA, finding the only limit to the exhaustion mandate is when the administrative remedies are not "available." *Id.* at 1858-62. "[A]n inmate is required to exhaust those, but only those, grievance procedures that are 'capable of use' to obtain 'some relief for the action complained of.'" *Id.* at 1859 (quoting *Booth*, 532 U.S. at 738). This Court finds Plaintiff's arguments based on *Ross* are meritless, especially when he has managed to use the prison administrative remedies process on so many occasions.

The Court further finds Plaintiff failed to make any attempt to use the administrative remedies process to resolve his claim concerning the conditions of his confinement in the medical observation cell at DCF, and he has presented no valid reason to excuse him from this failure. An inmate does not get to pick and choose the appropriateness of a particular procedure to his situation, or rely on his own contrary interpretations of the process, or adhere to a belief that he should not have to comply with available processes. *See Thomas v. Parker*, 609 F.3d 1114, 1119 (10th Cir. 2010).

As demonstrated by the administrative records presented in this case, Plaintiff filed at least eleven grievances between October 17, 2011, and April 18, 2012. He repeatedly was provided with responses to his submissions, and he repeatedly appealed facility-level decisions to the DOC Administrative Review Authority (Dkts. 232-4, 232-5). The process clearly has been available to him.

After careful review, the Court finds there is no genuine issue of material fact, Fed.

8

R. Civ. P. 56(a), and Plaintiff has failed to exhaust the available administrative remedies for his claim as required by 42 U.S.C. § 1997e(a).

**ACCORDINGLY,** Defendants' motion for summary judgment (Dkt. 232) is GRANTED, and Plaintiff's claim regarding the conditions of the medical cell is DISMISSED WITHOUT PREJUDICE. Plaintiff's motion for leave to file second motion for summary judgment (Dkt. 230) is DENIED as moot.

**IT IS SO ORDERED** this 26th day of September 2017.

**Dated this 26th day of September, 2017.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma